### THE CONISCLIFF.

### ANDERSON v. WHITNEY-BODDEN SHIPPING CO., Inc.

(Circuit Court of Appeals, Fifth Circuit. February 10, 1921.)

#### No. 3609.

1. **Seamen ⬅11—Act imposing hospital expenses of immigrant on vessel does does not apply to alien officer.**

   Immigration Act, § 32 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r), imposing on a vessel liability for hospital expenses of alien not entitled to admission, who is afflicted with a contagious disease and is temporarily admitted for treatment, does not make the vessel liable for medical treatment of an alien employed on board the vessel as mate.

2. **Seamen ⬅11—American vessel held not liable for hospital expenses of alien mate.**

   Immigration Act, § 35 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ss), making it unlawful for a vessel carrying passengers from a foreign port to have employed on board one afflicted with contagious disease which could have been discovered before sailing, does not impose liability on a vessel of American register not engaged in carrying passengers for the hospital expenses of its alien mate, made necessary by a contagious disease which manifested itself after the vessel left Porto Rico for a United States port.

3. **Seamen ⬅20—Hospital expenses voluntarily paid by vessel cannot be deducted from wages.**

   The amount paid by a vessel for the expense of treatment of its mate for a contagious disease contracted by his misconduct ashore, for which payments the vessel was not legally liable, and which were not made under compulsion, do not constitute a valid claim, which the vessel can set off against the mate's claim for wages.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Appeal from the District Court of the United States for the Southern District of Alabama; Robert T. Ervin, Judge.

Libel by Ernest Anderson against the schooner Coniscliff; the Whitney-Bodden Shipping Company, Incorporated, claimant. Decree for claimant (266 Fed. 959), and libelant appeals. Reversed.

Alex T. Howard, of Mobile, Ala., for appellant.
David B. Goode, of Mobile, Ala., for appellee.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. The appellant libeled the schooner Coniscliff, a vessel registered under the laws of the United States, for $88 claimed to be due on his wages as mate of that vessel. The claimant (appellee here) admitted that the amount stated was due, but successfully resisted the demand on the ground that the vessel was required to pay, and did pay, more than that amount to the United States Marine Hospital at Mobile for and on account of treatment of the appellant for syphilis. After the appellant, who is an alien, was employed and entered upon service as mate, he contracted the loathsome and contagious disease mentioned through his own fault while ashore in Porto Rico during the vessel's stop there. When the vessel arrived at Mobile, the disease had manifested itself, and the medical officer who examined the appellant ordered him to be sent to the Marine Hospital for treatment. This was done over appellant's protest. He remained at that hospital some time and was cured. In consequence of a lack of funds to maintain the Marine Hospital Service, due to a failure of Congress to pass an urgent deficiency bill, a charge was made for the treatment given the appellant, and demand was made that the vessel pay the amount of such charge, which it did.

[1] In behalf of the appellee it is contended that the vessel was legally bound for the expense incurred for the treatment of the appellant under the circumstances mentioned, and that, that expense having been occasioned by the wrongful conduct of the appellant, the amount due to him for wages was subject to be applied towards repayment to the vessel or its owner for such outlay. It may be assumed, without being decided, that the amount of an expense to which a vessel is subjected in consequence of wrongful conduct of a seaman while ashore may be set off against the seaman's demand for wages due him. The claim that the vessel was liable for the expense of the medical treatment of the appellant is based on section 32 of the Immigration Act of 1917 (39 Stat. 874, 895 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼r]), which reads as follows:

"Sec. 32. That no alien excluded from admission into the United States by any law, convention, or treaty of the United States regulating the immigration of aliens, and employed on board any vessel arriving in the United States from any foreign port or place, shall be permitted to land in the United States, except temporarily for medical treatment, or pursuant to regulations prescribed by the Secretary of Labor providing for the ultimate removal or deportation of such alien from the United States, and the negligent failure of the owner, agent, consignee, or master of such vessel to detain on board any such alien after notice in writing by the immigration officer in charge at the port of arrival, and to deport such alien, if required by

such immigration officer or by the Secretary of Labor, shall render such owner, agent, consignee, or master liable to a penalty not exceeding $1,000, for which sum the said vessel shall be liable and may be seized and proceeded against by way of libel in any district court of the United States having jurisdiction of the offense."

[2] Nothing in the language of the just quoted section indicates an intention to make a vessel liable for the medical treatment of an alien employed on board who is excluded from admission into the United States. From the fact that a temporary landing for medical treatment is excepted from the prohibition of the landing of an excluded alien, it is not to be implied that such landing and treatment are subject to be made compulsory and at the expense of the vessel on board which such alien was employed. Provision for treatment of certain such aliens at the expense of a vessel is made by section 35 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 4289¼ss), which reads as follows:

"Sec. 35. That it shall be unlawful for any vessel carrying passengers between a port of the United States and a port of a foreign country, upon arrival in the United States, to have on board employed thereon any alien afflicted with idiocy, imbecility, insanity, epilepsy, tuberculosis in any form, or a loathsome or dangerous contagious disease, if it appears to the satisfaction of the Secretary of Labor from an examination made by a medical officer of the United States Public Health Service, and is so certified by such officer, that any such alien was so afflicted at the time he was shipped or engaged and taken on board such vessel and that the existence of such affliction might have been detected by means of a competent medical examination at such time; and for every such alien so afflicted on board any such vessel at the time of arrival the owner, agent, consignee, or master thereof shall pay to the collector of customs of the customs district in which the port of arrival is located the sum of $50, and pending departure of the vessel the alien shall be detained and treated in hospital under supervision of immigration officials at the expense of the vessel; and no vessel shall be granted clearance pending the determination of the question of the liability to the payment of such fine and while it remains unpaid: Provided, that clearance may be granted prior to the determination of such question upon the deposit of a sum sufficient to cover such fine: Provided further, that such fine may, in the discretion of the Secretary of Labor, be mitigated or remitted."

Under the last-quoted provision a finding that the vessel, or one acting in its behalf, was at fault in the respect stated when the excluded alien was shipped or engaged and taken on board is made a prerequisite to the enforced treatment in a hospital of such alien at the expense of the vessel. It is not thought that a statute which makes provision, in stated circumstances, for the medical treatment of an excluded alien at the expense of the vessel which brought such alien to this country, properly can be given the effect of authorizing immigration officials to subject a vessel to such an expense in a case not provided for by statute. The circumstance that the right to exercise the power granted was made subject to specified conditions indicates the absence of intention to confer the power unconditionally and without qualification, or in respect of a vessel not shown to be within the terms of section 35, to wit:

"Any vessel carrying passengers between a port of the United States and a port of a foreign country."

We have not been referred to, and are not aware of, any statutory provision which purports to authorize the enforced medical treatment at the expense of the vessel of an alien seaman employed on an American registered vessel which is not shown to be a carrier of passengers.

[3] It seems that the appellant, being a seaman of an American registered vessel, would have been entitled to free medical treatment in a Marine Hospital, but, for the exhaustion of the appropriated funds available for such purpose. U. S. Comp. Statutes 1918, §§ 9128, 9192, p. 1495, note. Whether that is or is not true, the law has not undertaken to give to such a seaman's inability to obtain treatment on the usual terms, due to the circumstance mentioned, the effect of making him involuntarily subject to be medically treated at the expense of the vessel employing him. It was not made to appear that the payment, by or in behalf of the vessel, of the expense of the appellant's treatment in the hospital was made under legal compulsion or was involuntary. The conclusion is that a valid claim against the appellant was not acquired as a result of a payment not made at his instance or request, and not by law required to be made by the vessel or its owner. It follows that his demand for wages was not subject to be defeated by the counterclaim which prevailed.

Because of the error committed by sustaining that counterclaim or defense, the decree is reversed.